2026 NOV 25 A 9:51

# ATTACHMENT 1

# COMPLAINT FORM

**(for non-prisoner filers without lawyers)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE** WESTERN **DISTRICT OF** WISCONSIN

---

(Full name of plaintiff(s))

Chandini C Revanna
9187 CLAIREMONT Mesa Blvd, SUITE 6
SAN DIEGO, CA. 92123

vs

Case Number:

**26-cv-1147-jdp**

(to be supplied by clerk of court)

(Full name of defendant(s))

THERMO FISHER SCIENTIFIC
8551 RESEACH WAY
SUITE - 90
MIDDLETON, WI 53562-4664

A. PARTIES

1. Plaintiff is a citizen of INDIA (State) and resides at LAWFUL PERMANENT RESIDENT OF USA 8793 LIGHTWAVE AVE APT C-127 SAN DIEGO CA - 92123 (Address)

(If more than one plaintiff is filing, use another piece of paper).

2. Defendant THERMO FISHER SCIENTIFIC
(Name)

is (if a person or private corporation) a citizen of ______________________
(State, if known)

and (if a person) resides at ______________________
(Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for ______________________
(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B. STATEMENT OF CLAIM

On the space provided on the following pages, tell:

1. Who violated your rights;
2. What each defendant did;
3. When they did it;
4. Where it happened; and
5. Why they did it, if you know.

SEE ATTACHED A CONTINUATION OF SECTION B - STATEMENT OF CLAIM (10 PAGES).

**Attachment A**

**B. STATEMENT OF CLAIM (Section B, continued)**

| Individual Names | **Job title / role at Thermo Fisher Scientific** |
|---|---|
| **David Lumby** | Senior EHS Director; Supervisor of Paul Orlowski |
| **Paul Orlowski** | Plaintiff's direct Supervisor |
| **Daniel Lynn** | EHS employee; EHS representative to the Institutional Biosafety Committee |
| **Benjamin Ziehr** | Chair of the Institutional Biosafety Committee |
| **Elizabeth Schwantes** | Human Cell Lab Director |
| **Sarah Duffy** | Human Resources Representative |

**1. Paul Orlowski (Plaintiff's direct supervisor).**

Plaintiff is a brown-skinned woman who was employed by Thermo Fisher Scientific as a Senior Environmental Health and Safety (EHS) Specialist at its Middleton facility beginning February 10, 2025. Plaintiff began working in Environmental Health & Safety in 2007 and had approximately 18 years of experience with four professional degrees and a certified industrial hygienist. Plaintiff received her first notice of termination on December 11, 2025. Following Plaintiff's internal reports alleging retaliation and wrongful termination, the initial termination decision was rescinded pending an internal corporate investigation. Plaintiff provided corporate investigator Adam Furano with information and directed their attention to internal documents relevant to the reported concerns leading to retaliation. Following the corporate investigation, Defendant made changes to its EHS management structure, advertised a new EHS Director position, and subsequently hired an individual to fill that position. Plaintiff received a second and final notice of termination on March 13, 2026. Paul Orlowski, Assistant EHS Director a white male was Plaintiff's direct supervisor. David Lumby is Senior EHS Director a white male and was Orlowski's supervisor. Daniel Lynn is a white male EHS employee who was hired specifically to oversee biosafety, represent EHS on the Institutional Biosafety Committee (IBC), and report to the same supervisor, Paul Orlowski.

Statement of Facts

In February 2025, Orlowski told Plaintiff that he came from a laundromat background and entered the pharmaceutical industry through his personal friendship with Lumby. He also told

Plaintiff that he has no background in biosafety and that he hired Daniel Lynn to address biosafety.

Brian Cowles EHS Director under the same Senior Director David Lumby at Richmond site, participated in Plaintiff's interview as Orlowski's immediate supervisor. After Plaintiff accepted the position, she needed a couple of weeks to relocate to Middleton before she started work. During that time, Orlowski began reporting directly to Lumby instead of Cowles. During Plaintiff's first week of work, Orlowski told her that Cowles was no longer his supervisor.

Between March – April 2025, after an employee expressed concerns about exposure in the laboratories, Plaintiff explained OSHA bloodborne pathogen (BBP) requirements to Orlowski. Orlowski responded, "There has to be a way around these OSHA laws." For weeks Orlowski discouraged Plaintiff's interactive BBP training and vaccination efforts and told her to remove her BBP training and vaccination coordination initiatives from her self-evaluation, stating that he did not think anything would change at the training department.

The individual in charge of the Training Department also understood the importance of conducting interactive Bloodborne Pathogens (BBP) training and coordinating hepatitis B vaccination offerings during these training sessions to ensure compliance with OSHA's requirement to make the vaccination available within 10 working days of initial assignment to duties involving occupational exposure to bloodborne pathogens.

Observing Paul Orlowski's lack of support, the training department in-charge emailed Plaintiff and recommended involving upper management. Between May-June, in good faith, and to protect employee health and safety and the company, Plaintiff escalated the matter to Lumby during one of his site visits. David Lumby responded that Daniel Lynn already had an operational program in place. He further stated that he had a lady expert consultant serving on the Institutional Biosafety Committee (IBC) and, therefore, could not be out of compliance. Plaintiff had to seek assistance from Richmond Biosafety Officer a white female Nickie Rose to convince David Lumby. Despite these assurances, David asked Plaintiff to prepare a PowerPoint presentation outlining each applicable requirement of the Occupational Safety and Health Administration (OSHA) Bloodborne Pathogens (BBP) Standard, identifying specific compliance deficiencies, and highlighting the required corrective measures that had not been implemented. Finally between [August–September] 2025, plaintiff initiated a vaccination program along with NEOP training for new employees. Plaintiff scheduled 40 vaccination and live training sessions for current employees and emailed the training department. Orlowski and David Lumby did not approve live training with vaccine offerings for existing employees. When plaintiff mentioned on current employee trainings, Orlowski messaged Plaintiff on Microsoft Teams, "hang in there"

During the same period, Plaintiff reported to Orlowski concerns regarding "pencil-whipping" of Biosafety Level 2 (BSL-2) laboratory inspection records, whereby inspection checkboxes were marked as completed without verifications actually being performed. Plaintiff offered to assist in correcting these deficiencies. Orlowski responded that he would not take any action merely because Plaintiff had identified the issues. The BSL-2 laboratories operated without an established process for identifying laboratory personnel at risk of occupational exposure or ensuring their enrollment in an appropriate medical surveillance program. Nevertheless, the laboratory inspection records indicated that all laboratory personnel had been coordinated for participation in the medical surveillance program, despite the absence of procedures to verify such participation. Daniel Lynn after completing risk assessment was directly responsible for coordinating the enrollment of BSL-2 laboratory personnel in the medical surveillance program, subject to oversight by the Institutional Biosafety Committee (IBC). Plaintiff alleges that neither Paul Orlowski/David Lumby nor the IBC held Daniel Lynn accountable for his performance deficiencies and failure to comply with applicable biosafety and medical surveillance requirements.

Employees were not trained in shipping hazardous chemicals on public roads. On November 24th, Orlowski emailed Plaintiff to stop pushing for Department of Transportation (DOT) training (HR record). On August 28, Sample Management employees experienced a near-miss event involving hazardous toxic chemical package received from laboratory personnel from other buildings (Intelex record). Orlowski stopped Plaintiff from pursuing DOT and OSHA Chemical Hygiene Plan corrections that she was attempting to initiate in good faith as part of her job duties

Orlowski held Plaintiff to stricter standards than Lynn. In 2025, Lynn received a promotion between June -July and bonus in December despite biosafety deficiencies that Plaintiff had reported to Orlowski between March-April 2025. Orlowski did not hold Lynn accountable for his performance gaps, which included fine print vaccination information and not actually coordinating lab personnel to receive their vaccinations, misclassifying biosafety labs and allowing BSL2 labs to be designated as BSL1 labs, allowing "pencil-whipping" on BSL-2 inspection records. An employee in Building 15 also raised concerns regarding inconsistencies in Hazard Communication (HazCom) requirements between the sample management area and laboratories across the hallway handling the same materials, as well as concerns regarding the handling of domestic and international patient samples in the laboratories. Daniel Lynn blamed Benjamin Ziehr was responsible for that noncompliance, and he is yet to make a decision regarding hazard communication in sample management area. Lynn also blamed Elizabeth Schwantes human cell lab Director for one of his performance gaps, which includes BBP non-compliance in the human cell lab, and asked Plaintiff to perform his biosafety duties. Orlowski

allowed Lynn to blame others for his performance gaps and Orlowski also allowed Lynn to delegate his responsibilities on Plaintiff to initiate new employee vaccinations. Orlowski authorized a bonus for Lynn while Plaintiff was correcting Lynn's non-compliance items and issued termination letter to the plaintiff.

Based on Plaintiff's extensive professional experience in Environmental Health and Safety (EHS), identifying missing safety programs, inadequate processes, and regulatory noncompliance is not unusual. In her previous employment, Plaintiff successfully initiated and developed three to six safety programs within six months. However, Plaintiff had never previously encountered a work environment like the one at Thermo Fisher Scientific, where management neither took appropriate action to address identified compliance deficiencies nor permitted Plaintiff to implement corrective measures. Instead of supporting Plaintiff's professional efforts to protect employee health and safety and ensure regulatory compliance protecting the company, supervisor repeatedly obstructed her efforts to fulfill her assigned responsibilities. The supervisor's coaching was limited to one directive: find ways around regulatory requirements.

Plaintiff maintains that personal friendships, loyalties, preferences, or relationships should not influence professional judgment, supervisory decisions, or the enforcement of regulatory requirements. Such personal considerations should never compromise the fundamental ethical obligations of an Environmental Health and Safety (EHS) professional. The primary responsibility of an EHS professional is to protect employee health and safety, safeguard the organization, and ensure compliance with applicable regulatory requirements. Plaintiff alleges that management prioritized personal loyalties and favoritism over these professional obligations, resulting in the obstruction of Plaintiff's compliance efforts and adverse treatment against her for attempting to fulfill her assigned responsibilities.

On or about September 16, 2025, and in November Plaintiff complained to Orlowski in writing that she was being treated unequally compared to Lynn (HR Records)

In late November or early December 2025, Plaintiff informed Orlowski and Cowles by Microsoft Teams message of her plan to relocate internally to Boston, Massachusetts. In November 2025, she had applied for EHS positions there to leave a work environment in which her compliance efforts were obstructed with complete disregard to employee health and safety. Orlowski did not respond to her message. Cowles responded that Plaintiff's departure would be a loss to the Middleton facility. Plaintiff believes Cowles responded this way because he had observed, through daily group emails, how closely Plaintiff worked with site employees to address their projects and concerns. Plaintiff believed Cowles was committed to employee health and safety and to the company's compliance with regulatory requirements.

On December 11, 2025, Plaintiff received a termination notice that stated no reason for the termination. According to HR, David Lumby had approved the termination. This was less than three months after her written complaint and shortly after she announced her plan to move to another section of Thermo Fisher Scientific.

Plaintiff identified biosafety and other non-compliance issues and offered to fix them. Plaintiff believes Orlowski did not welcome corrective action from her and wanted to conceal Lynn's performance gaps, and his own performances gaps which she had identified. Plaintiff believes that, because of Orlowski's personal friendship with Lumby, it was easier for Orlowski to obtain Lumby's approval for plaintiff's termination than it would have been under the oversight of Cowles. Plaintiff believes Orlowski acted because of her race, color, and sex, and in retaliation for her federal compliance efforts and her complaint about differential treatment between her and the comparator Daniel Lynn.

**2. David Lumby (Senior EHS Director).**

During 2025, Lumby only approved new employee training after convincing him through Nickie Rose and prevented Plaintiff from carrying out her planned sitewide bloodborne pathogens training and hepatitis B vaccination program for current employees. As a consequence of Lumby's decision not to approve Plaintiff's proposed interactive Bloodborne Pathogens training and hepatitis B vaccination offerings for existing employees, implementation was effectively deferred until the following year's annual training cycle. This further delayed compliance with OSHA's requirement to make hepatitis B vaccination available within 10 working days of initial assignment to duties involving occupational exposure. According to Elizabeth Schwantes, the applicable vaccination requirements had not been communicated to her for approximately six years.

Lumby first rejected Plaintiff's regulatory explanations but accepted the same information when plaintiff came through Nikki Rose, a white female EHS professional at the Richmond facility, who was allowed to run a sitewide program. He had no objection towards Nikki Rose running a sitewide program. Both Plaintiff and Nicki Rose worked under the same senior EHS leadership of David Lumby and were subject to the same applicable federal OSHA Bloodborne Pathogens requirements. There was no scientifically relevant difference between the human-derived biological materials handled at the Richmond and Middleton facilities that would justify rejecting Plaintiff's regulatory recommendations while had no objections under Nicki Rose. David Lumby was receptive to the same laws and principles when presented by a white woman while dismissing them when presented by Plaintiff, a brown woman.

When Plaintiff reported Daniel Lynn's verbal abuse screaming "Get Out" to Lumby, he and Orlowski did not meaningfully investigate as per company policy. Lumby and Orlowski later

criticized Plaintiff's performance for the very compliance deficiencies they had prevented her from correcting. Needlestick prevention training was part of the Bloodborne Pathogens training that David Lumby and Paul Orlowski prevented Plaintiff from providing to existing employees. Plaintiff also made a lasting contribution to employee safety by developing a Standard Operating Procedure (SOP) for needle safety with a particular team in a specific process, an accomplishment that no other EHS staff member had previously achieved. Plaintiff further alleges that Lumby failed to hold Paul Orlowski and Daniel Lynn accountable for their own performance deficiencies, failure to fulfill their assigned responsibilities, and longstanding regulatory compliance failures. Instead, Plaintiff was subjected to criticism and adverse employment actions for identifying and attempting to correct those same deficiencies. Plaintiff believes Lumby's actions were motivated by discrimination based on her race, color, and sex, as well as a desire to shield Orlowski and Lynn from scrutiny and accountability for their own performance deficiencies and compliance failures.

**3. Daniel Lynn (EHS representative to the Institutional Biosafety Committee).**
Daniel Lynn, who was hired specifically to address biosafety and serve as an EHS representative on the Institutional Biosafety Committee (IBC), is one of Plaintiff's comparators. However, unlike Plaintiff, he held no professional safety certifications. Following exposure concerns from Jessica Phillips, As part of her job, Plaintiff discovered deficiencies through review of existing laboratory records that during 2024-2025, Daniel Lynn relied on fine-print vaccination language and left vaccination boxes unchecked on lab biosafety risk assessments and kept BSL-2 inspection records that did not identify specific labs or employees. When Plaintiff discussed the risk assessment form with Daniel Lynn, he shouted "Get Out" at her during a professional discussion in April 2025.

Daniel Lynn also made inaccurate statements about Plaintiff's work, including blaming her for a staircase gate that had been installed before she was hired. Paul Orlowski knew that he still responded supporting Daniel Lynn's claim. Additionally, Lynn and Paul Orlowski claimed that Plaintiff had access to a particular door but continued to rely on others for entry, when, in fact, Paul Orlowski had never approved her access. Photographic evidence is available to support Plaintiff's account and Plaintiff alleges he would not make corrections and dismisses if they came from a brown woman for example: when she raised human material hazard communication concern in sample management area, or mis-categorizing human cell work under BSL1, coordinating vaccinations, it was always either Human Cell Lab Director's fault or IBC was at fault. He participated in IBC and had the capacity to address all non-compliance items. Daniel Lynn received a promotion and bonus despite the deficiencies Plaintiff reported. Plaintiff believes Daniel Lynn dismissed her because of her race, color, and sex, and because she reported his deficiencies. Plaintiff offered help but Daniel Lynn was not receptive.

**4. Benjamin Ziehr (Chair of the Institutional Biosafety Committee).**

Between March and April 2025, plaintiff had a meeting with Jessica Phillips and her immediate supervisor Benjamin Zeihr. Meeting was concerning hepatitis B vaccination, Ziehr asked, toward the end of the meeting, why the meeting was necessary and instructed Plaintiff to answer only "yes" or "no." In the presence of Phillips, he stated that Daniel Lynn had assigned the vaccination issue to Plaintiff and that it was now her responsibility to resolve. He subsequently complained to Paul Orlowski that Plaintiff did not explain. Benjamin Ziehr did not hold Daniel Lynn accountable, did not object to inaccurate BSL-2 inspection records, and resisted Plaintiff's biosafety concerns. However, he became receptive when Plaintiff requested assistance from Nikki Rose a white woman at another facility, who raised similar concerns. Plaintiff believes that Ziehr's conduct was influenced by Plaintiff's race, color, and sex. When Plaintiff initially offered assistance, Ziehr responded in an email that he had his own policies. However, Plaintiff alleges that significant regulatory noncompliance existed and that Ziehr was unwilling to accept assistance from Plaintiff, a woman of color. During the meeting, Ziehr also stated that Paul Orlowski was responsible for the vaccination-related noncompliance and did not hold Daniel Lynn accountable.

**5. Elizabeth Schwantes Human Cell Lab Director**

Plaintiff alleges that during discussions concerning longstanding deficiencies in the implementation of OSHA Bloodborne Pathogens requirements, Elizabeth Schwantes made a dismissive and demeaning remark to Plaintiff, stating, "You cannot come off the streets and implement street laws here." The statement was made in response to Plaintiff's efforts to explain and implement federal occupational health and safety requirements, including hepatitis B vaccination offers, employee training, and medical surveillance for personnel working with human-derived biological materials. Plaintiff alleges that Schwantes acknowledged that she had not been informed of the applicable hepatitis B vaccination requirements for approximately six years. She only had a project that required offering vaccinations for a small group of employees that she tried to coordinate through EHS and warned plaintiff that she has hundreds of employees that may need to go through the process. Neither Paul Orlowski nor Daniel Lynn had coordinated all accepted vaccinations through Elizabeth's project. Plaintiff contends that she was not introducing arbitrary rules or personal preferences but was attempting to implement established federal OSHA requirements that had not been adequately addressed by Daniel Lynn and the facility's IBC biosafety oversight. Plaintiff, a woman of Indian origin, perceived Schwantes's remarks as demeaning and dismissive of her professional qualifications and regulatory expertise. Plaintiff further contends that this incident contributed to the hostile and unequal treatment she experienced while attempting to fulfill her assigned occupational health and safety responsibilities. Ultimately, Plaintiff had to seek assistance from Nickie Rose to convince the IBC chair to follow

basic biosafety principles. The IBC chair was receptive to the same laws and principles when presented by a white woman while dismissing them when presented by Plaintiff, a brown woman.

**6. Sarah Duffy (Human Resources representative).**

On December 11, 2025, Plaintiff was verbally informed that her termination was due to alleged "performance gaps." However, the written termination letter did not specify any reason for her termination. Prior to receiving the termination notice, Plaintiff had not been placed on a Performance Improvement Plan (PIP) or subjected to any formal disciplinary action. Plaintiff disputes the stated justification because management repeatedly obstructed her efforts to implement required safety programs and subsequently criticized her performance for the very activities management had prevented her from completing. Plaintiff contends that the alleged performance gaps were used as a pretext for discriminatory and retaliatory termination.

Duffy did not interview Plaintiff about any performance concerns, and Plaintiff had no chance to respond before receiving the letter. Plaintiff believes Duffy relied on accounts from male employees without asking for Plaintiff's account, and that she did so because of Plaintiff's sex and race and supported male employees in retaliation for her good faith compliance efforts. The Termination letter did not state any performance reasons. After Plaintiff complained in ethics point, Plaintiff was placed on paid administrative leave and was terminated again by letter on March 13, 2026.

**Harm to Plaintiff**

As a result of the alleged discriminatory and retaliatory conduct, Plaintiff lost her employment, the opportunity to pursue an internal position in Boston, and future career advancement opportunities with Defendant. Plaintiff suffered significant emotional distress and sought mental health counseling for several weeks.

Plaintiff alleges that white male and female employees in leadership positions disregarded company policies and regulatory compliance requirements while exercising their authority to marginalize and undermine Plaintiff, a woman of color who holds four academic degrees and possesses extensive professional expertise in identifying missing programs, regulatory noncompliance, addressing compliance deficiencies, and developing and implementing required safety programs. Plaintiff further believes that these individuals sought to conceal their own management deficiencies, prior compliance failures, and performance gaps by discrediting and ultimately terminating Plaintiff rather than acknowledging her efforts to identify and correct longstanding workplace health and safety deficiencies.

Plaintiff further alleges that, following her termination and an internal corporate investigation, Thermo Fisher Scientific created a new Environmental Health and Safety (EHS) Director position above Paul Orlowski in the organizational hierarchy, potentially to address the same compliance deficiencies that Plaintiff had previously identified and attempted to correct. Meanwhile, the individuals Plaintiff alleges were responsible for these deficiencies remained employed and retained their employment and associated financial benefits and mental peace while Plaintiff suffered termination, emotional distress, financial losses, including the loss of her bonus, and damage to her professional career in the pharmaceutical industry.

Plaintiff contends that she possessed the professional qualifications, expertise, and willingness to correct these longstanding compliance deficiencies and could have implemented the necessary corrective actions had management been receptive to her recommendations and allowed her to perform her duties without interference.

Plaintiff alleges that these compliance deficiencies could have been addressed through her existing position without the need to hire a new EHS Director had management personnel, including David Lumby, Paul Orlowski, Daniel Lynn, Benjamin Ziehr, and Elizabeth Schwantes, supported her efforts rather than obstructing or dismissing them.

Plaintiff alleges that, prior to receiving her initial termination letter on December 11, 2025, she had not escalated the conduct of David Lumby, Paul Orlowski, Daniel Lynn, Benjamin Ziehr, and Elizabeth Schwantes to Human Resources, Corporate Management, OSHA, or the Equal Employment Opportunity Commission (EEOC). The maximum escalation was to David Lumby regarding Paul Orlowski, Daniel Lynn and Benjamin Ziehr. There was no escalation on David Lumby or others mentioned above to Site Leader, Corporate or their respective supervisors or HR. Plaintiff acted in good faith and remained focused on fulfilling her professional responsibilities as a Sr Environmental Health and Safety Specialist by identifying regulatory compliance deficiencies, and offering help to resolve the issues protecting employee health and safety, and implementing required safety programs. Plaintiff sought to resolve these concerns internally focusing on employee health & safety and protecting the company.

Despite the alleged obstruction, disparate treatment, and hostile working environment, Plaintiff's intention was to continue her professional career with Thermo Fisher Scientific by pursuing an internal transfer to its Life Sciences division in Boston. Plaintiff did not seek confrontation or litigation but wished to perform her duties, maintain her livelihood as a single mother, and pursue professional advancement within the company. Plaintiff alleges that, rather than supporting her compliance efforts or allowing her to pursue an internal career opportunity, management subjected her to retaliatory termination, resulting in the loss of her employment, financial security, and anticipated career opportunities.

Plaintiff further asserts that the individuals responsible for the longstanding compliance deficiencies retained their employment and financial benefits, while Plaintiff was left to bear the loss of her career opportunities at Thermo Fisher Scientific, a company she deeply valued and enjoyed working for, as well as the financial and emotional consequences of her termination.

Plaintiff contends that David Riser, the Site Director, and the newly appointed Environmental Health and Safety (EHS) Director should ensure appropriate management accountability, to the extent supported by the evidence, for management's response to the compliance concerns she raised and the discriminatory and retaliatory treatment she allegedly experienced.

Plaintiff further alleges that Defendant benefited from her professional expertise, identification of longstanding regulatory compliance deficiencies, and recommendations for corrective action, while Plaintiff suffered termination, financial losses, emotional distress, and damage to her professional career. Plaintiff could have remained silent, overlooked the existing compliance deficiencies, and represented that the facility was operating in full compliance, thereby avoiding conflict with the five management personnel involved. Instead, Plaintiff chose to uphold her professional integrity, fulfill her responsibilities as a safety professional, and protect employees and the company from potential occupational health and safety risks.

Plaintiff alleges that, rather than acknowledging and supporting her efforts, Defendant subjected her to adverse employment actions while retaining the benefit of her compliance concerns, she identified and the corrective measures she recommended. Plaintiff contends that Defendant benefited from her work at the expense of her employment, financial security, mental health and professional advancement.

Plaintiff seeks appropriate legal and equitable relief for the financial losses, emotional distress, and harm to her professional career allegedly resulting from Defendant's discriminatory and retaliatory conduct.

Chandini C Revanna
11/23/2026

C. JURISDICTION

☑ I am suing for a violation of federal law under 28 U.S.C. § 1331.

OR

☐ I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $_______________.

D. RELIEF WANTED

Describe what you want the court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or stop doing something.

See ATTACHED PAGE TITLED 'RELIEF WANTED CONTINUATION, (1 PAGE).

**Attachment B**

**Attachment B –Relief Wanted Continuation**

**Plaintiff deeply valued her work at Thermo Fisher and had hoped to continue building her career in the pharmaceutical industry there. Plaintiff alleges that Defendant's discrimination and retaliation led to her termination, disrupted her career plans, and undermined her confidence in her professional skills and abilities.**

**As a single mother and the primary wage earner for her family, Plaintiff experienced financial instability and significant anxiety about her ability to support her family after losing her job. She sought mental health counseling and attended several sessions with two therapists.**

**Plaintiff seeks compensatory damages for the emotional distress and loss of professional confidence she experienced. She requests that the jury determine the amount of compensatory damages based on the evidence presented at trial. Plaintiff also asks the Court to award lost wages and any other financial relief available by law.**

**Plaintiff asks the Court to hold Defendant accountable for any discrimination or retaliation established at trial and to order appropriate corrective measures to help prevent abuses of managerial authority and protect employees, including women of color and women in vulnerable or disadvantaged circumstances, from similar harm.**

Chandini C Revanna
11/23/2026

E. JURY DEMAND

☑ Jury Demand - I want a jury to hear my case

OR

☐ Court Trial – I want a judge to hear my case

Dated this 23 day of NOVEMBER 20 26.

Respectfully Submitted,

Chandini C Revanna

Signature of Plaintiff

806-679-6468

Plaintiff's Telephone Number

drchandi@yahoo.com

Plaintiff's Email Address

9187 CLAIREMONT MESA BLVD

SUITE-6 SAN DIEGO CA-92123

(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper).

**REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FILING FEE**

☐ I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a request to proceed in the district court without prepaying the fee and attached it to the complaint.

☑ I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.